IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES VILLAREAL, M22525,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) Case No. 24-cv-1453-SPM |
| C/O CONNER, | ) |
| | ) |
| **Defendant.** | ) |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiff James Villareal, an inmate of the Illinois Department of Corrections (IDOC) housed at Menard Correctional Center, brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff's allegations relate to an incident of excessive force on March 3, 2024. At the time he filed the complaint on June 4, 2024, Plaintiff indicated he had not yet received a response to his grievance. Given the short time between the underlying incident and the date of filing this suit, the Court directed Plaintiff to show cause concerning his exhaustion of administrative remedies. (Doc. 14). Plaintiff filed two responses, thus discharging his responsibility to show cause. (Docs. 15, 16).

## Background

As the Court previously explained in the Show Cause Order (Doc. 14), Plaintiff signed and dated his complaint on June 4, 2024, (Doc. 1 at 8), and it was received for filing by Court on June 6, 2024. While the complaint was pending initial review, Plaintiff filed

a supplement on October 28, 2024, that contained copies of his grievance that had been returned from the Administrative Review Board on August 5, 2024. (Doc. 13 at 2).

In the Complaint, Plaintiff alleged that on March 3, 2024, when he was escorted to segregation for allegedly displaying his genitals to a guard, he was taken into a side room where he was severely beaten by Defendant Conner. (Doc. 1 at 6). He claimed in the complaint form that he had submitted a grievance at the prison but had not yet received a response. (Doc. 1 at 4). He also complained that it was difficult to get grievance forms from officers in segregation at Menard, and that even if he did get a grievance form it would never be returned. (Doc. 1 at 5).

In response to the Order to Show Cause, Plaintiff indicates that grievances are difficult to secure, and that grievance processing is slow. (Doc. 15 at 1). He contends he submitted two grievances and got just one of the two back 90 days after he had submitted it. He argues that the "rule book" says it should only take 30 days, and if more time is needed Internal Affairs, the Adjustment Committee, or any investigator may request an additional 14 days. He states that once he got his grievance back on July 1, 2024, he then mailed it to the Administrative Review Board in Springfield, and once that was returned he submitted it to the Court. He argues he believed that he took all the correct steps, and he asks the Court to accept his lawsuit to stop mistreatment at Menard. (Doc. 15 at 1).

In a second response to the Order to Show Cause, Plaintiff references an amended complaint, and he argues that at least some of his claims should be allowed to proceed because for some of the claims the grievance process was unavailable. (Doc. 16 at 1). Specifically, he mentions claims in an amended pleading about policies and customs, and

about administrative decisions made by the Director of IDOC, both items he contends are not grievable. (Doc. 16 at 2). He then argues that he submitted "various grievances regarding the customs and practices complained of, excessive force, a failure-to-protect, denial of medical care, and the disciplinary charges between March 3, 2024, and June 4, 2024." (Doc. 16 at 3). He claims each grievance was hand delivered to correctional staff, but grievance officers and counselors failed to comply with IDOC's grievance procedures and failed to timely process his grievances. He argues the grievances that were never processed impede him from being able to comply with the PLRA's exhaustion requirement. (Doc. 16 at 3-4). He further claims he did not learn of the failure to process his grievances until after the 60 allotted days had elapsed, on June 2, 2024, which lead to him filing the present complaint.

Plaintiff contends that claims regarding disciplinary charges were not exhausted until August 5, 2024, but other claims about customs and practices, excessive force, failure to protect, and denial of medical care as presented in his amended complaint should be allowed to proceed.[1] (Doc. 16 at 4). In sum, he argues he should be allowed to proceed on the custom and policy claims because no administrative remedies were available, and on his other claims because the administrative remedies were made unavailable by the non-response to grievances. (Doc. 16 at 5).

---

[1] The grievance that was returned by the ARB on August 5, 2024, and that Plaintiff submitted to the Court in October of 2024, discussed a disciplinary ticket *and* Officer Conner's alleged assault of Plaintiff. (Doc. 13 at 2-4). The Administrative Review Board responded to both aspects of the grievance.

## Analysis

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d 739, 740 (7th Cir. 2008). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Although it is generally appropriate to wait for a defendant to raise an affirmative defense, the Seventh Circuit has noted that "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). A plaintiff can plead himself out of court, and if he includes allegations "that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (citations omitted). Although a plaintiff need not anticipate or overcome an affirmative defense like exhaustion, if he alleges facts sufficient to establish that an affirmative defense applies, "the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). "A premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting administrative remedies." *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).

Plaintiff's first response to the Order to Show Cause presents two primary contentions. First, he argues that there is a rule that governs grievance processing which should have required the prison to respond to his grievance within 30 days, or with just a 14-day extension beyond that. The grievance process in the Illinois Department of Corrections is set forth in the Illinois Administrative Code. 20 Ill. Admin. Code 504.800-504.870. IDOC regulations provide that "[t]he Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.830(e). Furthermore, "[t]he Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* § 504.850(e). Against this backdrop, it is obvious there is no 30-day or 44-day deadline for grievance processing. There is an aspirational deadline that the grievance officer reviews a grievance within 60 days, but even with that, the Director then has an additional six months, both deadlines tempered by the "reasonably feasible" language. Plaintiff's argument that his grievance should have been returned so quickly at the prison is unavailing and does not excuse his failure to wait for a response.

Second, Plaintiff contends he has never pursued a lawsuit before, and he simply did what he thought was right. (Doc. 15 at 1). He asks the Court to accept his lawsuit regardless of exhaustion so that prison officials cannot "get away" with mistreatment. The PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about

administrative remedies that might be available to him." *Twitty v. McCoskey*, 226 F.App'x 594, 596 (7th Cir. 2007) (holding that a prisoner's alleged lack of knowledge of grievance procedures does not excuse noncompliance with available administrative remedies). A lack of familiarity with the grievance rules does not excuse Plaintiff's early filing of this lawsuit before he got his grievance back from Springfield. Additionally, to the extent that Plaintiff asks the Court to simply waive the fact that he sued before finishing his grievance process, the Court cannot do so because administrative exhaustion is a mandatory requirement that the Court does not have discretion to waive. *See e.g., Id.* at 596; *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

In Plaintiff's second response to the Order to Show Cause, he seemingly concedes that the fully exhausted grievance he submitted to the Court was returned after he filed the lawsuit, but he argues he has many other claims in an amended complaint that should not be dismissed for non-exhaustion. (Doc. 16). He argues he has a claim or claims about policies or practices overseen by the Director of IDOC, and that these claims center on administrative decisions which are not grievable. Thus, for these claims, he contends exhaustion is not possible. As for other claims on excessive force, failure to protect, and deliberate indifference to his medical needs, he argues that he submitted many individual grievances on these issues and has not gotten any response. He claims the lack of response has rendered the grievance process unavailable for these additional claims. Whatever merit any of these contentions may have, Plaintiff has not submitted an amended complaint in this matter, so any ruling on these arguments would be speculative. Plaintiff cannot proceed in this lawsuit on the premise that he *may*

theoretically have other claims that are not subject to the exhaustion framework set forth in the Order to Show Cause.

The Court finds that Plaintiff has not provided sufficient information to demonstrate that he exhausted his administrative remedies *before* filing this lawsuit. His lack of understanding of the grievance process, or his plea that the Court excuse his mistake, are not valid reasons to disregard the fact that he filed this lawsuit on June 4, 2024, but did not exhaust his grievance until August 5, 2024. Under controlling precedent, Plaintiff's complaint must be dismissed without prejudice for failure to exhaust administrative remedies. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("A premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting administrative remedies."). However, Plaintiff should be aware that this dismissal does not prevent him from filing a new lawsuit about his allegations. If Plaintiff does decide to file a new lawsuit about the claim in this case, or about any additional claims he may wish to present on the other topics mentioned in his second response to the Order to Show Cause, he should make sure to wait until he has received responses to his grievances. He should also be mindful of the statute of limitations, which generally requires § 1983 claims filed by an Illinois inmate to be filed within two years of completion of the grievance process. In sum, Plaintiff's Complaint is dismissed without prejudice for failure to exhaust his administrative remedies prior to filing this lawsuit.

**Disposition**

Plaintiff's Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to exhaust administrative remedies. The Clerk of Court is **DIRECTED** to enter judgment and to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: January 29, 2025

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**